UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. |
| v. : | 3:11-cr-174(VLB) |
| : | |
| ANTOVANY ACOSTA and DAVID : | November 8, 2013 |
| CASTELLANO-NUNEZ : | |

**MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTIONS
FOR JUDGMENT OF ACQUITTAL OR MOTIONS
FOR A NEW TRIAL [Dkt. #793, 795, 796]**

I.   Introduction

**Antovany Acosta ("Acosta") was charged with four counts in a multiple count indictment for Conspiracy to Distribute and to Possess with Intent to Distribute Over One Kilogram of Heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count 1), and with Possession with Intent to Distribute and Distribution of Heroin in violation of 21 U.S.C. § 841(b)(1)(C) (Counts 4, 5, and 6). David Castellano-Nunez ("Castellano") was only charged with Conspiracy to Distribute and to Possess with Intent to Distribute Over One Kilogram of Heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count 1). Jury selection took place on June 4, 2013, and the presentation of evidence began on June 6, 2013. Following a six-day trial, a jury of twelve found defendant Acosta guilty as to Counts 1, 4, 5, and 6 of the indictment and defendant Castellano guilty as to Count 1 of the indictment. At the close of the Government's case, both defendants made oral motions for judgments of acquittal, but the Court denied these motions. On June 27, 2013, defendants filed the present motions before the**

1

Court requesting judgment of acquittal under Federal Rule of Criminal Procedure 29(c), and, alternatively, moved for a new trial under Federal Rule of Criminal Procedure 33. For the reasons discussed below, defendants' motions are DENIED.

II. Legal Standard

Federal Rule of Criminal Procedure 33 provides that, upon a defendant's motion, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In exercising the discretion so conferred, the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (internal quotation marks and citations omitted); *United States v. Padilla*, 511 F. App'x 8, 10 (2d Cir. 2013) *cert. denied*, 133 S. Ct. 2815 (2013) (same). However, only where exceptional circumstances exist may the trial judge "intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414; *United States v. Castelin*, 3:11-CR-183 JCH, 2013 WL 3540052 (D. Conn. July 10, 2013) (same). "Even in cases involving a witness's perjured testimony, however, a new trial is warranted only if 'the jury probably would have acquitted in the absence of the false testimony.'" *United States v. Truman*, 688 F.3d 129, 141 (2d Cir. 2012) (quoting *Sanchez*, 969 F.2d at 1413–14). "The test is whether it would be a manifest injustice to let the guilty verdict stand." *Sanchez*, 969 F.2d at 1414. (internal quotation marks and citations omitted). In other words, for a court to grant a motion for a new trial after examination of the entire case, "[t]here must be a real

2

concern that an innocent person may have been convicted." *Id.* (internal quotation marks and citations omitted).

Federal Rule of Criminal Procedure 29 provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "A Rule 29 motion should be granted only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (citations omitted); *United States v. Cossette*, 3:12CR232 JBA, 2013 WL 5274349 (D. Conn. Sept. 18, 2013) (same). "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial 'bears a heavy burden,'" as he "must show that when viewing the evidence in its totality, in a light most favorable to the Government, and drawing all inferences in favor of the prosecution, no rational trier of fact could have found him guilty." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008); *Irving*, 452 F.3d at 117. Further, "it is well settled that Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Cote*, 544 F.3d 88, 99 (2d Cir. 2008) (internal quotation marks and citation omitted). "The Court must give full play to the right of the jury to determine credibility." *Id.* Furthermore, pieces of evidence should not be viewed in isolation, but in conjunction with each other, and the conviction must be upheld where reasonable inferences support a jury's conclusion that the defendant was guilty beyond a reasonable doubt. *United States v. Matthews*, 20

F.3d 538, 548 (2d Cir. 1994). This heavy standard is all the more applicable in conspiracy cases because "a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004) (internal quotation marks and citations omitted). Therefore, "[t]he ultimate question is not whether *we believe* the evidence adduced at trial established defendant's guilt beyond a reasonable doubt, but whether *any rational trier of fact could so find*." *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). Circumstantial evidence, moreover, can sufficiently provide grounds for a jury's finding of guilt, and the Government, in response to a motion for judgment of acquittal, need not disprove every reasonable hypothesis raised by a defendant as long as sufficient evidence was presented at trial for a jury to find guilt beyond a reasonable doubt. *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993).

### III. Discussion

The defendants argue that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt because: (i) the only evidence of a conspiracy presented was uncorroborated intercepted telephone calls; (ii) the voice identification testimony presented at trial was given by a lay witness, not a voice identification expert; and (iii) there was no evidence that the quantity of drugs reasonably attributable to either defendant exceeded one kilogram.

**The Court finds that the defendants have not met their heavy burden of showing that a reasonable trier of fact could not have concluded on the evidence presented to it that the defendants were guilty beyond a reasonable doubt of the charges against them. The Court is also not persuaded that upon review of the record, manifest injustice would occur unless a new trial is granted.**

**In order to prove a defendant guilty of engaging in a narcotics distribution conspiracy, the Government must prove two essential elements: (i) the conspiracy alleged in the indictment existed and (ii) the defendant knowingly joined it.** *See United States v. Jones*, 30 F.3d 276, 281-82 (2d Cir. 1994); *United States v. Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992).

**As to the first element, the Government must prove an agreement between at least two persons to commit the unlawful acts.** *See United States v. Tejada*, 956 F.2d 1256, 1264 (2d Cir. 1992); *United States v. Rubin*, 844 F.2d 979, 983 (2d. Cir. 1988). **Moreover, the agreement need not be explicit, "proof of a tacit understanding will suffice."** *Rea*, 958, F.2d at 1214. **The co-conspirators also are not required to know all of the "details of the conspiracy, so long as they have agreed on the essential nature of the plan."** *Id.* (citing *United States v. Bagaric*, 706 F.2d 42, 63 (2d Cir. 1983).

**As to the second element, the "size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends."** *United States v. Vanwort*, 887 F.2d 375, 386 (2d Cir. 1989). **The defendant's conduct must be viewed in light of**

the other members of the conspiracy and the surrounding circumstances because "a seemingly innocent act, when viewed in the context of surrounding circumstances may justify an inference of complicity." *United States v. Calabro*, 449 F.2d 885, 890 (2d Cir. 1971).

There was abundant evidence presented at trial proving that Acosta and Castellano were part of a larger narcotic distribution conspiracy and that each knowingly joined the conspiracy and played an integral role in it.

The Connecticut Statewide Narcotics Task Force ("SNTF") received information from a confidential informant that an individual was selling heroin from a building located at 28 Maltby Place in New Haven; the individual was later identified as Acosta. Wiretaps were approved on several of Acosta's phones, including a cellular phone number that the informant later called to arrange a heroin purchase. Subsequent to the call, the informant met with Acosta and purchased five bundles of heroin. *Government's Trial Exhibits 121, 113* [hereinafter "GTE"]. The police also used an undercover officer to arrange for and purchase heroin from Acosta of approximately 90 grams. The exchange, furthermore, was recorded by a surveillance camera. *GTE 123, 4.* Over the course of the investigation, the Government determined that the base of operations for the conspiracy was Acosta's third floor apartment located at 28 Maltby Place, and that Acosta's source for the heroin supply was Adrian Pinzon-Gallardo ("Pinzon").

The initial wiretap on Acosta's phone led to the identification and subsequent wiretaps on two other phones registered to Acosta. From the

6

transcripts of the intercepted conversations it was apparent that Acosta used these other cellular phones to conceal and continue the drug distribution operation. Based on these wiretaps it was confirmed that the operation's drug deals typically involved quantities of 250 grams of heroin and were conducted every ten days or so. *GTE 55*. Several conversations between Acosta and Pinzon revealed that the two often met at the Taqueria Jalisciense Restaurant located at 271 Grand Avenue in New Haven to conduct the transactions. On one particular occasion, New Haven Police Department Sergeant Robert Lawlor and DEA Special Agent Raymond Walczyk testified that they observed Acosta and Pinzon meet at the restaurant shortly after an intercepted call by Acosta suggested such a meeting would take place. These types of conversations, transactions, and observations were continually repeated over the course of the investigation, as more fully detailed in the Government's Consolidated Memorandum of Law in Opposition to Defendants' Motion for Judgment of Acquittal or, Alternatively, for a New Trial ("Government's Memorandum"). [Dkt. #819]. Therefore, when the defendants allege that the wiretapped conversations were never corroborated, they ignore the evidence showing that the details of the intercepted conversations were in fact observed by various means of surveillance. They also ignore the fact that evidence need not be corroborated and that a jury may reach its verdict based upon a single piece of evidence provided that the jury finds it to be credible. See *United States v. Sabhnani*, 539 F. Supp. 2d 617, 626 (E.D.N.Y. 2008), *aff'd*, 599 F.3d 215 (2d Cir. 2010); *United States v. Carrique*, 316 F.2d 186, 187 (2d Cir. 1963).

During the investigation, surveillance ultimately resulted in the arrest and seizure of over 3 kilograms of heroin from Pinzon. At the end of the investigation of defendants Acosta and Castellano and pursuant to a warrant, police searched the apartment where the defendants resided and found 27 bundles of heroin and $4,769 in cash, wrapped in rubber bands. This evidence is sufficient for a reasonable fact finder to draw appropriate inferences to find that Acosta was the main conspirator in this heroin distribution ring and that he possessed heroin with the intent to distribute it.

There was also sufficient evidence for a trier of fact to find that Castellano was intimately and knowingly involved in the heroin conspiracy. Castellano is Acosta's brother who resided with Acosta in the 3rd floor apartment at 28 Maltby Place, which was the base of operations for the conspiracy. The wiretaps showed that on numerous occasions Castellano provided bundle quantities of heroin to Acosta's customers, collected proceeds from the sales, and directly dealt with the purchasers when Acosta was not available or when he was so directed. *GTE 11, 15, 17, 18, 32, 44 45, 46, 51, 53, 54, 56, 60*. Other calls demonstrated that Castellano acted as an independent decision-making authority within the conspiracy. For example, on June 21, a customer asked for two bundles of heroin for a slight discount, Castellano conducted the transaction without seeking Acosta's explicit approval. *GTE 51*. The Government cites in its memorandum of law numerous other examples which are more than sufficient for a reasonable finder of fact to conclude that Castellano was knowingly and integrally involved in the conspiracy.

**Defendants argue that the substance of the wiretaps was never appropriately corroborated, so a reasonable jury could not have found the defendants guilty on that evidence. Even ignoring the other direct evidence presented at trial in the form of testimony and surveillance footage, the substance of the wiretapped conversations was corroborated because the nature of the discussions, organizing and arranging drug sales, was objectively proved to be true as these types of transactions did occur. Evidence was provided showing that undercover officers and informants purchased drugs from Acosta, surveillance footage was provided showing meetings between Acosta and Pinzon, Pinzon was arrested while possessing 3.7 kilograms of heroin, and the police found 27 bundles of heroin when the stash house in which Acosta and Castellano lived was searched. These events are sufficient to corroborate the conversations that the Government argued proved a conspiracy to engage in heroin distribution. A reasonable jury could have drawn affirmative inferences from the defendants' conduct based on the circumstantial and corroborating evidence to ultimately find that both Acosta and Castellano were willing participants in a narcotics distribution conspiracy, and the defendants' argument that the wiretaps were uncorroborated, therefore, is unavailing.**

**Secondly, defendants argue that the Government's use of a lay person to identify the defendants' voices on the wiretaps instead of utilizing a voice identification expert was insufficient for a finding of guilt. Even ignoring the abundant other evidence that the Government provided confirming the identities of Acosta and Castellano, detailed on pages 23-25 of the Government**

Memorandum, there was nothing improper about the Government's use of Ms. Gonzalez to confirm the identities of the voices on the wiretaps. Ms. Gonzalez is fluent in Spanish and served as the shift monitor during the entire five month period when the telephone conversations were intercepted. After gaining practical experience by listening to hundreds of hours of conversations by the defendants, she was able to identify each of the defendants' voices on these calls. Based on her experience, it is entirely possible that a reasonable jury could credit her testimony and find that a sufficient basis exists for the requisite proof of the defendants' identities. The Court also agrees with the Government's contention that the rules of evidence do not require an expert in voice identification or recognition to be used at trial when a lay person with sufficient familiarity with a defendant's voice testifies. *See United States v. Mendiola*, 707 F.3d 735, 739-43 (7th Cir. 2013).

Finally, the defendants argue that the Government has not sufficiently demonstrated that it was reasonably foreseeable to attribute the distribution of more than one kilogram of heroin to the defendants. The Government presented at trial evidence of Acosta's heroin transactions totaling 1749 grams just during the period the wiretaps were in place. *See GTE* 9, 13, 22, 26, 27, 28, 30, 31, 33, 37, 47, 48, 49, 50, 57, 71, 63, 64, 67, 71, 84, 100, 101, 102. As discussed above, there is sufficient corroborating evidence for the jury to conclude that these transactions did in fact occur. As to Castellano, the Government has provided sufficient evidence for a jury to conclude beyond a reasonable doubt that his integral role in the conspiracy made the amount of heroin involved in the overall

operation attributable to him. The Government sufficiently argued that the goal of the conspiracy was to acquire large quantities of heroin from Pinzon and then to conduct daily resales of street level quantities, one or more bundles at a time, to various lower-level purchasers. Even though the Government's trial evidence only showed Castellano directly responsible for small bundle quantities of heroin, Castellano is responsible for the "'reasonably foreseeable acts' of others in furtherance of the conspiracy.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (quoting U.S.S.G. § 1B1.3(a)(1)). Moreover, "[t]he defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved." *Id*. Here, the defendant's own words intercepted by the police confirmed not only his understanding that the conspiracy was occurring, but his active participation and integral role in it. Castellano not only lived in the stash house out of which the conspiracy operated, but he also conducted individual drug sales, collected drug proceeds, and was entrusted to manage the conspiracy when Acosta was not present. This evidence provides a sufficient basis for a jury to conclude that it was reasonably foreseeable for Castellano to be liable for the actions of the entire conspiracy regardless of the quantity of drugs that Castellano directly touched. Given the weight of the evidence, the defendants have not satisfied their burden of proving that a reasonable jury could have not found them guilty on the evidence presented or that manifest injustice would result should a new trial not be awarded.

IV. Conclusion

For the foregoing reasons, Defendants' [Dkt. #793, 795, and 796] Motions for Acquittal and a New Trial are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 8, 2013